6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00092-CV
______________________________



IN RE:
HARLAND VETTER





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross



MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Harland Vetter has filed a petition for writ of mandamus in which he asks us to order
the court reporter of the 1st Judicial District Court in Sabine County to immediately prepare
and file the record of his trial. This Court has jurisdiction to issue a writ of mandamus
against a "judge of a district or county court in the court of appeals district; . . . ." Tex.
Gov't Code Ann. Â§ 22.221(b) (Vernon 2004). We do not have jurisdiction to issue a writ
of mandamus against a court reporter in this context.


 
Â Â Â Â Â Â Â Â Â Â The petition is denied.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â August 23, 2004
Date Decided:Â Â Â Â Â Â Â Â Â August 24, 2004



partment
of Public Safety Crime Laboratory in Garland for analysis. John Donahue testified that, based on
DNA analysis, the blood found on Williamson's sandals was the victim's. Additionally, the State
introduced testimony from Steven Johnson. Johnson testified that, several hours before the shooting,
Williamson told Johnson of his plans to kill Jones. After the shooting, Johnson testified Williamson
returned to Johnson's shop and admitted shooting Jones. The State also introduced testimony from
Delois Williams, who testified Williamson admitted shooting Jones. 

 In rebuttal, Williamson introduced the testimony of Lowman Lowe. Lowe testified he was
working on a friend's car in the driveway of a home across the street from the crime scene. He
testified he heard a sound and thought the car backfired. Then he turned and looked over to 1906
Sayle Street and saw Lewis, Harris, and Hoffman exit the house and leave the area. Lowe also
testified he did not see Williamson exit the residence, which was inconsistent with Harris' and Lewis'
testimony that Williamson exited first. On appeal, Williamson argues that Lowe's testimony was
sufficient to negate the State's evidence placing him at the crime scene. Williamson also contends
the evidence was factually insufficient because the murder weapon was never recovered. 

 While Lowe's testimony may create some doubt about the credibility of Harris' and Lewis'
testimony, this Court does not engage in a review of the weight and credibility given to a witness'
testimony. Id. This Court must give deference to the fact-finder's role as the sole judge of the weight
and credibility given to witness testimony. Id. Further, Lowe testified that he was in a hurry to get
back to work and was not paying close attention and that he could have "missed something." As a
result, Williamson has failed to present evidence that would render the verdict so against the great
weight and preponderance of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d
129. Therefore, the evidence presented at trial was factually sufficient to support the conviction. 

Assistance of Counsel

 In his third and fourth points of error, Williamson alleges he received ineffective assistance
of counsel because his trial counsel "opened the door" to questions concerning his past criminal
history and for failing to object during the State's closing argument. The standard for testing claims
of ineffective assistance of counsel is set out in Strickland v. Washington, 466 U.S. 668 (1984). To
prevail, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's
representation fell below an objective standard of reasonableness, and (2) that the deficient
performance prejudiced his or her defense. Id.; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000); Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). Under this standard, a claimant
must prove that counsel's representation so undermined the proper functioning of the adversarial
process that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at
686. 

 Our review of counsel's representation is highly deferential, with a strong presumption that
counsel's conduct falls within a wide range of reasonable representation. Id. at 689. This Court will
not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another
attorney might have pursued a different course support a finding of ineffectiveness. Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Harner v. State, 997 S.W.2d 695, 704 (Tex.
App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the
record. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). As a result, the Texas Court
of Criminal Appeals has often held that on direct appeal the record has not been sufficiently
developed to enable an appellate court to adequately determine whether an appellant was provided
ineffective assistance of counsel. Id. at 814-15. 

 In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate
court will assume a strategic motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436,
441 (Tex. Crim. App. 2001). We will not conclude the challenged conduct constitutes deficient
performance unless the conduct was so outrageous no competent attorney would have engaged in
it. Id.; see Thompson, 9 S.W.3d at 814. 

 Williamson contends the following exchange between his trial counsel and his previous
employer resulted in ineffective assistance of counsel: 

 Q. [Appellant]: Did you consider him [Williamson] a dependable
worker? 


 A. [Witness]: Yes, I sure do . . . .


 Q. [Appellant]: And you were aware that Donnie has a past criminal
record, is that right?

 

 A. [Witness]: Yes. At the time I interviewed him and talked to him he
explained all that to me.


 Q. [Appellant]: And he told you he'd been to the penitentiary in the past,
is that right?


 A. [Witness]: Right. He sure did. 


 Q. [Appellant]: Do you trust him? 


 A. [Witness]: I always trusted him . . . .


Despite Williamson's motion in limine to prevent a discussion of his criminal history in the presence
of the jury, the above line of questioning opened the door for the following: 

 Q. [State]: Mr. Kent, did Mr. Williamson tell you that he had been
convicted of attempted murder?


 A. [Witness]: I don't believe he told me when I first talked to him but it
was on my records that he was.


 Q. [State]: Mr. Kent, did Mr. Williamson tell you that he had been
convicted of felony theft?

 

 A. [Witness]: Donnie explained to me that he had been in trouble for
several different things, but I really can't remember exactly what they were.


 Q. [State]: Mr. Kent, did Mr. Williamson tell you he had been convicted
of burglary of a motor vehicle?


 A. [Witness]: No sir. I can't really remember. 


 Q. [State]: Did Mr. Williamson tell you he was on parole? 


 A. [Witness]: Yes, he did. 




 The record is void of any explanation for counsel's decision to open the door to Williamson's
criminal history. Similarly, in Thompson, the court held the record had not been fully developed to
a point where the court could adequately consider the issue on direct appeal. Thompson, 9 S.W.3d
at 814. The court reasoned that, "an appellate court should be especially hesitant to declare counsel
ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory
representation, especially when the record provides no discernible explanation of the motivation
behind counsel's actions." Id. While Williamson's counsel could have elicited testimony of
Williamson's character without delving into his criminal history, this Court will not second-guess
counsel's trial strategy. Harner, 997 S.W.2d at 704. Therefore, Williamson has failed to establish
that his counsel's conduct fell below an objective standard of reasonableness. (3) Further, based on the
evidence set forth above in the factual sufficiency analysis, Williamson has failed to show how
counsel's actions so prejudiced his defense as to render counsel ineffective. Accordingly,
Williamson's third point of error is overruled. 

 In his fourth point of error, Williamson complains his trial counsel was ineffective because
she failed to object to the State's closing argument during the punishment phase, particularly the
State's reference to prior sentences and its alleged suggestion those punishments were not enough. 
Specifically, Williamson contends failure to object to the following argument constituted ineffective
assistance of counsel:

 The State offered into evidence and there has been no objection [to] several pen
packets. (4) These pen packets are here for your review. It will tell you how old Mr.
Williamson is, 42 years old. If you read through them, it will show you when he
received his first conviction, show you how many years in prison he was sentenced
to, back in '79. Two years here, ten years there. They start to add up. And look
where we still are. The system has not given Mr. Williamson enough time in prison. 
This offense, this murder, is the final one. This must be Ladies and Gentlemen. 


 Williamson's prior convictions were properly in evidence for enhancement purposes, and the
State could properly argue that those convictions be considered by the jury in assessing punishment. 
See Tex. Pen. Code Ann. § 12.42 (Vernon Supp. 2003). Also, we do not read the quoted argument
as suggesting that the earlier sentences were too lenient and that the jury should make up for the
former lenience. In sum, the quoted portion of the State's argument was not objectionable. Thus,
Williamson's counsel could not have been ineffective for failing to object. We overrule the fourth
point of error.

 For the reasons stated, we affirm the trial court's judgment. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 15, 2003

Date Decided: February 25, 2003


Publish


1. Tex. R. Evid. 803 provides certain exceptions to the hearsay rule, but character reputation
regarding a location or structure is not among those exceptions. See Mo. Pac. R.R. Co. v. Cooper,
563 S.W.2d 233 (Tex. 1978) (reputation of extra-hazardous nature of railroad crossing); Rushing v.
State, 151 Tex. Crim. 221, 206 S.W.2d 252 (1947) (reputation of house as one where whiskey was
sold); Morgan v. City of Humble, 598 S.W.2d 364 (Tex. Civ. App.-Houston [14th Dist.] 1980, no
writ) (reputation of club as house of prostitution).
2. The State elicited the same testimony from Lewis. 
3. However, like in Thompson, Williamson is not precluded from bringing a petition for writ
of habeas corpus to fully develop the record and determine what, if anything, motivated trial counsel
to open the door to the complained-of line of questioning. Thompson v. State, 9 S.W.3d 808, 814-15
(Tex. Crim. App. 1999). 
4. Williamson stipulated to the truthfulness of the penitentiary packets. See Beck v. State, 719
S.W.2d 205, 210 (Tex. Crim. App. 1986).